**Oral Argument Not Yet Scheduled.**

**No. 25-5402**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

NATIONAL ASSOCIATION OF THE DEAF and DERRICK FORD,

*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, *et al.*,

*Defendants-Appellants.*

---

On Appeal from the United States District Court for the District of Columbia
Civil Action No. 25-01683 (AHA); the Honorable Amir H. Ali

---

**Brief of *Amici Curiae* Disability Rights Education and Defense Fund and
Eight Other Disability Rights Organizations in Support of
Plaintiffs-Appellees and Affirmance**

---

Maria Michelle Uzeta
CA Bar No. 164402
Disability Rights Education & Defense Fund
3075 Adeline St., Suite 210
Berkeley, CA 94703
510-644-2555
muzeta@dredf.org

Amy Farr Robertson
*Counsel of Record*
CO Bar No. 25890
Fox & Robertson, PC
1550 Wewatta St., Suite 200
Denver, CO 80202
303-951-4164
arob@foxrob.com

Attorneys for *Amici Curiae*

**<u>Certificate as to Parties, Rulings, and Related Cases</u>**

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned certifies as follows:

**A. Parties and *Amici***

Except the present *amici*, all parties, intervenors, and *amici* appearing before the district court and in this Court are listed in the Briefs for Defendants-Appellants and Plaintiffs-Appellees.

**B. Rulings Under Review**

References to the rulings at issue appear in the Briefs for Defendants-Appellants and Plaintiffs-Appellees.

**C. Related Cases**

References to related cases, if any, appear in the Briefs for Defendants-Appellants and Plaintiffs-Appellees.

Dated: June 2, 2026

/s/ *Amy Farr Robertson*
Amy Farr Robertson

Counsel for *Amici Curiae*

i

# **FULL LIST OF *AMICI***

1. Disability Rights Education and Defense Fund

2. American Association of People with Disabilities

3. Autistic Women & Nonbinary Network

4. CommunicationFIRST

5. Disability Law United

6. Disability Rights Bar Association

7. Justice in Aging

8. National Federation of the Blind

9. Paralyzed Veterans of America

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................v

GLOSSARY.......................................................................................... xii

CORPORATE DISCLOSURE STATEMENT .........................................................1

STATEMENT PURSUANT TO FED. R. APP. P. 29(a)(4)(E) ..............................1

CONSENT .................................................................................................1

STATEMENT OF INTEREST OF *AMICI CURIAE* ...................................................1

INTRODUCTION AND BACKGROUND .........................................................2

SUMMARY OF ARGUMENT ........................................................................9

ARGUMENT ............................................................................................10

    A.  The Statutory Text of Section 504 Provides a Private Right of Action Against Executive Agencies. ..........................................................10

    B.  Congress Adopted the Private Right of Action Enforcing Section 504 Against Executive Agencies When It Enacted and Re-Enacted the Rehabilitation Act. ..................................................................13

    C.  The Federal Government Has Taken the Position that Section 504 Creates a Private Right of Action Against Executive Agencies. ..................15

    D.  The Legislative History of Section 504 Demonstrates that that Statute Provides a Private Right of Action Against Executive Agencies. ...............17

    E.  A Significant Body of Caselaw has Consistently Affirmed a Private Right of Action Under Section 504 Against Executive Agencies. ...............19

    F.  Private Enforcement of Section 504 Is Indispensable Because Disabled People Cannot Rely on the Government to Police Its Own Discrimination. ..................................................................26

CONCLUSION ..........................................................................................28

CERTIFICATE REGARDING LENGTH OF BRIEF AND TYPEFACE.............30

CERTIFICATE OF SERVICE ...............................................................................31

ADDENDUM: STATEMENTS OF INTEREST OF *AMICI CURIAE* ..................32

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Sandoval*,
     532 U.S. 275 (2001)................................................................... 9, 11, 12, 14, 18

*Alsop v. Federal Bureau of Prisons*,
     No. 3:17-CV-02307, 2020 WL 13282134 (M.D. Pa. Sept. 30, 2020) ...............23

*American Association of People with Disabilities v. Bisignano*,
     No. 25-cv-00977-APM (D.D.C. filed Apr. 2, 2025) ....................................... 6-7

*American Council of the Blind v. Astrue*,
     No. C 05-04696 WHA, 2008 WL 1858928 (N.D. Cal. Apr. 23, 2008) .............22

*American Council of the Blind v. Paulson*,
     463 F. Supp. 2d 51 (D.D.C. 2006).............................................................. 16, 22

*Blue Chip Stamps v. Manor Drug Stores*,
     421 U.S. 723 (1975)..............................................................................................25

*Bragdon v. Abbott*,
     524 U.S. 624 (1998)..............................................................................................13

*Brown v. Cantrell*,
     No. 11-CV-00200-PAB-MEH, 2012 WL 3264292 (D. Colo. Feb. 9, 2012) .....21

*Cannon v. University of Chicago*,
     441 U.S. 677 (1979)...................................................... 10, 11, 12, 13, 14, 18, 26

*Clark v. Skinner*,
     937 F.2d 123 (4th Cir. 1991) ........................................................................ 23, 24

*Cousins v. Secretary of the United States Department of Transportation*,
     880 F.2d 603 (1st Cir. 1989)......................................................................... 23-24

*Cummings v. Premier Rehab Keller P.L.L.C.*,
     596 U.S. 212 (2022).................................................................8-9, 11, 12, 14

*Davis v. Astrue*,
   No. 06-cv-6108-EMC, 2011 WL 3651064
   (N.D. Cal. Aug. 18, 2011)................................................................ 19-20, 21, 22

*Doe A v. Spahn*,
   No. 1:23-CV-02859 (CJN), 2025 WL 1305360 (D.D.C. May 6, 2025) ............24

*Doe v. Attorney General of the U.S.*,
   941 F.2d 780 (9th Cir. 1991) .................................................... 19, 21, 24

*Gray v. Golden Gate National Recreational Area*,
   No. 08-cv-00722-EDL, 2012 WL 13140460 (N.D. Cal. Jul. 3, 2012)..............21

*Hawk v. Federal Bureau of Prisons*,
   No. 1:18-CV-1768, 2019 WL 4439705 (M.D. Pa. Aug. 30, 2019)...................23

*Hutto v. Warden*,
   No. 1:23-CV-119-MHC-JSA, 2023 WL 11959636
   (N.D. Ga. Mar. 13, 2023)..................................................................23

*J.L. v. Social Security Administration*,
   971 F.2d 260 (9th Cir. 1992) .................................................... 19, 21, 24

*Lane v. Peña*,
   518 U.S. 187 (1996)........................................................................19

*Lee v. U.S. Agency for International Development*,
   859 F.3d 74 (D.C. Cir. 2017)..............................................................17

*Lorillard v. Pons*,
   434 U.S. 575 (1978)........................................................................14

*National Association of the Deaf v. Trump*,
   486 F. Supp. 3d 45 (D.D.C. 2020)......................................................20

*Martin Luther King, Jr. Cnty. v. Turner*,
   798 F. Supp. 3d 1224 (W.D. Wash. 2025) ............................................7

*Mathis v. United States Parole Commission*,
   749 F. Supp. 3d 8 (D.D.C. 2024).................................................. 24, 25

*McAuliffe v. U.S. Department of Veterans Affairs*,
　No. 3:06-7353-WHA, 2007 WL 2123690 (N.D. Cal. Jul. 23, 2007) ................22

*McRaniels v. U.S. Department of Veterans Affairs*,
　No. 15-cv-802-WMC, 2017 WL 2259622 (W.D. Wis. May 19, 2017) .............21

*Medina v. Planned Parenthood South Atlantic*,
　606 U.S. 357 (2025) ................................................................................12

*Mendez v. Gearan*,
　947 F. Supp. 1364 (N.D. Cal. 1996) ...................................................................23

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
　547 U.S. 71 (2006) ................................................................................13

*Moya v. United States Department of Homeland Security*,
　975 F.3d 120 (2d Cir. 2020) ................................................................24

*SAI v. Department of Homeland Security*,
　149 F. Supp. 3d 99 (D.D.C. 2015) ........................................ 15, 18, 24

*SAI v. Smith*,
　No. 16-CV-01024-JST, 2018 WL 534305 (N.D. Cal. Jan. 24, 2018) ................21

*Trump v. Hawaii*,
　585 U.S. 667 (2018) ................................................................................3

*Washington v. Federal Bureau of Prisons*,
　No. 5:16-cv-03913-BHH-KDW, 2019 WL 2125246
　(D.S.C. Jan. 3, 2019) ................................................................................20

*White v. Decker*,
　No. 1:22-CV-02405-TWP-TAB, 2026 WL 184582
　(S.D. Ind. Jan. 23, 2026) ................................................................................23

*Yeh v. U.S. Bureau of Prisons*,
　No. 3:18-cv-943, 2019 WL 3564697 (M.D. Pa. Aug. 6, 2019) ........................20

*Ziglar v. Abbasi*,
　582 U.S. 120 (2017) ................................................................................17

**Briefs**

*Palamaryuk v. Duke*, Motion to Dismiss,
No. 2:17-cv-00441-MJP-JPD (W.D. Wash. Nov. 7, 2017), Dkt. No. 21...........16

*McAuliffe v. U.S. Department of Veterans Affairs*, Resp. to Pl.'s Second
Am. Compl.,
No. 3:06-7353-WHA (N.D. Cal. Jul. 17, 2007), Dkt. No. 33 ...........................16

*National Association of the Deaf v. Trump*, Mem. Opp'n to Pls.' Mot. for
Prelim. Inj.,
No. 25-cv-1683, 2025 WL 2077477 (D.D.C. June 11, 2025) .............................3

*SAI v. Department of Homeland Security*, Defs.' Reply in Supp. of Mots. to
Dismiss and Opp'n to Pl.'s Mot. for Leave to Amend and Mot. for
Discovery under Rule 56(d),
No. 14-1876 (RDM), 2015 WL 13837983 (D.D.C. Aug. 27, 2015)............ 15-16

*SAI v. Smith*, Federal Defs.' Notice of Mot. and Mot. to Dismiss Second.
Am. Compl.; Mem. of P. & A.,
No. 16-CV-01024-JST (N.D. Cal. Sept. 8, 2017), Dkt. No. 118 .......................16

*United Spinal Association v. Saul*, Mem. in Supp. of Def.'s Mot. to Dismiss
or, in the alternative, for Summ. J.,
No. 1:20-cv-02236-TSC (D.D.C. Dec. 7, 2020), Dkt. No. 18-1 ........................16

*Washington State Association of Head Start and Early Childhood
Assistance and Education Program v. Kennedy*, Dec. of Mary Roe in
Supp. of Pls.' Mot. for Prelim. Inj.,
No. 2:25-cv-00781-RSM (W.D. Wash. Dec. 5, 2025), Dkt. No. 135-1...........5, 6

**Statutes**

Administrative Procedure Act
5 U.S.C. § 704................................................................................ 15, 16, 27

Americans with Disabilities Act of 1990
42 U.S.C. § 12131 – 12165........................................................... 1-2, 4
42 U.S.C. § 12134................................................................................6

Civil Rights Restoration Act of 1987
Pub. L. No. 100-259, 102 Stat. 28 ...............................................14

*Rehabilitation Act of 1973
  29 U.S.C. § 794 ........................................................................... 1-29

Rehabilitation, Comprehensive Services, and Developmental Disabilities
Amendments of 1978
  Pub. L. No. 95-602, 92 Stat. 2955 ....................................... 12, 17, 18

Rehabilitation Act Amendments of 1986
  29 U.S.C. § 794a .................................................................... 25, 26
  Pub. L. No. 99-506, 100 Stat. 1807 ............................................... 14
  100 Stat. 1845, *codified at* 42 U.S.C. § 2000d-7 ............................ 11

Rehabilitation Act Amendments of 1992
  Pub. L. No. 102-569, 106 Stat. 4344 .............................................. 14

Title VI of the Civil Rights Act of 1964
  42 U.S.C. § 2000d ...................................................... 9, 10, 11, 13, 14

Title IX of the Education Amendments of 1972
  20 U.S.C. § 1681 ........................................................ 10, 11, 13, 14

**Rules**

Circuit Rule 26.1 ............................................................................... 1

Circuit Rule 28 .................................................................................. i

Fed. R. App. P. 26.1 ........................................................................... 1

Fed. R. App. P. 29 ........................................................................ 1, 30

Fed. R. App. P. 32 ............................................................................ 30

**Regulations**

3 C.F.R. § 102.150 ............................................................................ 6

3 C.F.R. § 102.151 ............................................................................ 6

3 C.F.R. § 102.160 ............................................................................ 6

28 C.F.R. § 39.130 ............................................................................ 6

28 C.F.R. § 39.150 ...........................................................................................6

28 C.F.R. § 39.151 ...........................................................................................6

28 C.F.R. § 39.160 ...........................................................................................6

**Legislative History**

124 Cong. Rec. 13901 (1978) ...........................................................................2

124 Cong. Rec. 37507 (1978) ................................................................... 4, 17

138 Cong. Rec. 31520-21 (1992).............................................................. 18, 24, 28

S. Rep. No. 93-1297 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 6373 ..................11

**Executive Materials**

Exec. Order 14151 (Jan. 20, 2025), 90 Fed. Reg. 8339 (Jan. 29, 2025) ..............3, 4

**Other Resources**

Eileen AJ Connelly,
  *Federal Government's Growing Banned Words List Is Chilling Act of Censorship*, Pen America, Dec. 22, 2025,
  https://pen.org/banned-words-list/ ......................................................................5

BOP: Population Statistics, Past Inmate Population Totals, Fed. Bureau of Prisons,
  https://www.bop.gov/about/statistics/population_statistics.jsp#old_pops
  (last visited June 1, 2026) ................................................................................8

Laura M. Maruschak *et al.*,
  *Survey of Prison Inmates, 2016: Disabilities Reported by Prisoners*,
  Bureau of Just. Stat. NCJ 252642 (2021),
  https://bjs.ojp.gov/content/pub/pdf/drpspi16st.pdf ..............................................8

Scalia & Garner,
  Reading Law: The Interpretation of Legal Texts (2012)...................................25

x

*2025 TSA checkpoint travel numbers*, TSA,
   https://www.tsa.gov/travel/passenger-volumes/2025 (last visited June 1,
   2026) ................................................................................................................8

S1810: Disability Characteristics, American Community Survey, 2024:
   ACS 5-Year Estimates Subject Tables, U.S. Census Bureau,
   https://data.census.gov/table/ACSST5Y2024.S1810?text=s1810 (last
   visited June 1, 2026) ......................................................................................8

*Visitation Numbers*, U.S. Nat'l Park Serv. (last updated Mar. 5, 2025),
   https://www.nps.gov/aboutus/visitation-numbers.htm ..................................8

# **GLOSSARY**

ADA:    Americans with Disabilities Act

APA:    Administrative Procedure Act

ASL:    American Sign Language

EOP:    Executive Office of the President

NAD:    National Association of the Deaf

SSA:    Social Security Administration

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 26.1 and 29 of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 26.1, all *Amici Curiae* state that they are private non-profit organizations, that they are not publicly held corporations or other publicly held entities, and that they have no parent corporations. No publicly held corporation or other public entity owns ten percent (10%) or more of any *amicus* organization.

## STATEMENT PURSUANT TO FED. R. APP. P. 29(a)(4)(E)

No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person — other than the *Amici Curiae*, their members, or their counsel — contributed money that was intended to fund preparing or submitting the brief.

## CONSENT

All parties have consented to the filing of this *amicus* brief.

## STATEMENT OF INTEREST OF *AMICI CURIAE*

*Amici Curiae* are nine disability rights organizations with collective expertise in enforcing through private rights of action section 504 of the Rehabilitation Act ("Section 504")[1] and a closely-related statute, title II of the

---

[1] 29 U.S.C. § 794.

1

Americans with Disabilities Act ("ADA").[2] Collectively, they and sister organizations have leveraged the power of these private rights of action to secure significant progress for the community, including the right to receive services in an integrated setting; access to public transportation systems; accessible sidewalks and curb ramps for people who use wheelchairs and pedestrian signals for blind people; access to parks and recreation; and effective communication and physical access for disabled prisoners.

*Amici* know from experience that when the party responsible for discrimination also controls agency enforcement, private litigation is not just a supplement to government enforcement — it is often the only enforcement. *Amici* submit this brief because the availability of a private right of action to challenge disability discrimination by Executive agencies will determine whether Section 504's promise of increasing access in "every phase of American life," 124 Cong. Rec. 13901 (1978), can be vindicated through private lawsuits, the primary mechanism through which Congress designed the statute to be enforced.

The individual *Amici* are described in the attached Addendum.

## **INTRODUCTION AND BACKGROUND**

By the government's own account, the President discontinued American Sign Language ("ASL") interpretation at his press briefings because he prefers to

---

[2] 42 U.S.C. § 12131 – 12165.

"shape his . . . image" without having to "share his platform with ASL interpreters." Mem. Opp'n to Pls.' Mot. for Prelim. Inj. at 1, 27 ("Opp. to MPI"), *Nat'l Ass'n of the Deaf v. Trump*, No. 25-cv-1683, 2025 WL 2077477 (D.D.C. June 11, 2025).  That decision followed closely on an Executive Order, issued the day the President took office, directing the elimination of federal programs addressing "accessibility," among other things. "Ending Radical and Wasteful Government DEI Programs and Preferencing," Exec. Order 14151, § 2(a) (Jan. 20, 2025) ("E.O. 14151"), 90 Fed. Reg. 8339 (Jan. 29, 2025). Whatever its motivation, the discontinuation of ASL interpretation at presidential press briefings cannot be squared with the prohibition — in place since 1978 — on disability discrimination and exclusion by Executive agencies. As the government itself emphasized below, "[t]he President of the United States possesses an extraordinary power to speak to his fellow citizens and on their behalf." *Trump v. Hawaii*, 585 U.S. 667, 701 (2018), *quoted in* Opp. to MPI at 1. The question this case presents is whether that power may be exercised in a manner that excludes Deaf constituents from communications made accessible to everyone else.

When Congress amended Section 504 to extend its prohibition on disability discrimination to Executive agencies, the drafters stressed that the rights secured by that statute "are and will continue to be in need of constant vigilance by

3

[disabled][3] individuals to assure compliance." 124 Cong. Rec. 37507 (1978). For decades, disabled people have relied on the well-established private rights of action under Section 504 and Title II of the ADA to sustain that vigilance across a range of contexts, including securing effective communication for Deaf people.

Recognizing that "[p]rivate enforcement of [Section 504] rights is an important and necessary aspect of assuring that these rights are vindicated," 124 Cong. Rec. 37507 (1978), Congress intended private plaintiffs to play a central role in ensuring compliance with the statute. *Amici* therefore urge this Court to ensure that this private right of action be co-extensive with the breadth of Section 504 itself, that is, that it include claims against the Executive, including the President, the Executive Office of the President ("EOP"), and related White House offices.

The need for a private right of action to secure nondiscriminatory treatment from our federal government extends far beyond this case. In the day-one Executive Order referenced above, this Administration announced its intent to "terminat[e]" all DEIA — "diversity, equity, inclusion, and accessibility" — programs, policies, and activities. E.O. 14151, § 2(a). Pursuant to that order, the Administration has taken action against grantees of federal financial assistance for

---

[3] When originally enacted, Section 504 referred to the individuals it protected as "handicapped." More modern usage — and indeed Section 504 as it currently reads — refers instead to "individuals with disabilities" or "disabled people." This brief will use the latter terminology.

conduct required by Section 504 and has directed grantees to avoid a lengthy list of terms that are central to the disability community and experience as well as disability rights law, including: "accessible;" "barrier(s);" "disability(ies);" "discrimination;" "equal opportunity;" "equality;" "excluded;" "inequality;" "mental health;" and "segregation." Dec. of Mary Roe in Supp. of Pls.' Mot. for Prelim. Inj., Ex. C at Dkt. pp 31-36, *Washington State Ass'n of Head Start and Early Childhood Assistance and Educ. Program v. Kennedy*, ("*Head Start*"), No. 2:25-cv-00781-RSM (W.D. Wash. Dec. 5, 2025), Dkt. No. 135-1. Other reportedly-prohibited terms include "autism," "disabled," and "integration." *See* Eileen AJ Connelly, *Federal Government's Growing Banned Words List Is Chilling Act of Censorship*, Pen America, Dec. 22, 2025, https://pen.org/banned-words-list/.

These initiatives are in direct conflict with the language and protections of Section 504. The statute expressly guarantees inclusion, providing that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, *be excluded from the participation in . . .* any program or activity . . . conducted by any Executive agency." 29 U.S.C. § 794(a) (emphasis added). Likewise, the Administration's rejection of "accessibility" conflicts with Section 504 regulations — later ratified by Congress through the

ADA[4] — that require federal agencies to ensure both effective communication[5] and architectural[6] access in their own programs and those of their grantees. The prohibition of words like "discrimination," "disabled," and "excluded," also directly contradicts the language of Section 504, while the exclusion of "autism," "mental health," and "integration" threatens to erase protections for entire categories of disabled people and to undermine the requirement that Executive agencies "administer programs and activities in the most integrated setting appropriate to the needs of" qualified disabled people, 28 C.F.R. § 39.130(d).

This Administration has drawn multiple challenges under Section 504 as a result of those actions including, of course, the present one. *See also, e.g.*, *Head Start*, *supra* p. 5 (challenging Administration orders that violate, and would require Head Start agencies to violate, Section 504); *American Ass'n of People with Disabilities v. Bisignano*, No. 25-cv-00977-APM (D.D.C. filed Apr. 2, 2025)

---

[4] 42 U.S.C. § 12134(a) & (b) (instructing the Department of Justice ("DOJ") to promulgate regulations that are consistent with the communications and accessibility provisions of 28 C.F.R. pt. 39).

[5] *See, e.g.*, 28 C.F.R. § 39.160 (DOJ regulation requiring effective communication with disabled people, giving "primary consideration" to their requested auxiliary aid); 3 C.F.R. § 102.160 (EOP regulation requiring same).

[6] *See, e.g.*, 28 C.F.R. § 39.151 (DOJ regulation requiring new facilities and alterations to be "readily accessible to and useable by" disabled people); 3 C.F.R. § 102.151 (EOP regulation requiring same); 28 C.F.R. § 39.150 (DOJ regulation requiring existing programs, when viewed in their entirety, to be "readily accessible to and useable by" disabled people); 3 C.F.R. § 102.150 (EOP regulation requiring same).

(challenging the Administration's massive reduction of staff and services of the Social Security Administration ("SSA")); *cf. Martin Luther King, Jr. Cnty. v. Turner*, 798 F. Supp. 3d 1224, 1248 (W.D. Wash. 2025) ("The problem with [the government's] argument is that [it] fail[s] to acknowledge the evidence in the record that demonstrates that [it] interpret[s] federal antidiscrimination laws in a manner that is inconsistent with well-established legal precedent."). These challenges arise from particular agency actions, but the government's legal theory reaches considerably further. It doesn't just argue that it may treat disabled people less favorably in one context; it contends that disabled people lack a direct judicial remedy for discrimination by any Executive agency — that Congress's promise of nondiscrimination is enforceable against every covered entity except the federal government itself. That is not what Congress intended, and it is not what Section 504 says.

The practical consequences of the government's legal theory would be sweeping as disabled people participate in myriad federal programs and would have no way to challenge discrimination and exclusion. For example, census data from 2021 estimate that 13.3 percent of the civilian noninstitutionalized population

had a disability.[7] Thus at least 44 million of the more than 331 million people who visited national parks in 2024 likely were disabled.[8] Similarly, more than 120 million of the 906 million passenger interactions with Transportation Security Administration checkpoints likely involved disabled people.[9] The federal Bureau of Prisons reported holding 155,270 people in custody in 2025.[10] Applying Bureau of Justice Statistics data indicating that 28.8 percent of federal prisoners have disabilities,[11] this suggests that more than 44,000 disabled people are incarcerated in federal facilities.

These examples all come from cases in which courts have held that disabled people may seek injunctive remedies for Executive agency discrimination under Section 504. They thus underscore the importance of this Court following suit to

---

[7] S1810: Disability Characteristics, American Community Survey, 2024: ACS 5-Year Estimates Subject Tables, U.S. Census Bureau, https://data.census.gov/table/ACSST5Y2024.S1810?text=s1810 (last visited June 1, 2026).

[8] *Visitation Numbers*, U.S. Nat'l Park Serv. (last updated Mar. 5, 2025), https://www.nps.gov/aboutus/visitation-numbers.htm.

[9] *2025 TSA checkpoint travel numbers*, TSA, https://www.tsa.gov/travel/passenger-volumes/2025 (last visited June 1, 2026) provides daily numbers; the undersigned downloaded those figures into Microsoft Excel to calculate the total number for 2025.

[10] BOP: Population Statistics, Past Inmate Population Totals, Fed. Bureau of Prisons, https://www.bop.gov/about/statistics/population_statistics.jsp#old_pops (last visited June 1, 2026).

[11] Laura M. Maruschak *et al*., *Survey of Prison Inmates, 2016: Disabilities Reported by Prisoners* 4 tbl. 3, Bureau of Just. Stat. NCJ 252642 (2021), https://bjs.ojp.gov/content/pub/pdf/drpspi16st.pdf.

ensure — as Congress intended — that disabled participants in federal programs can exercise the private right of action necessary to challenge discrimination by Executive agencies. A contrary decision would close the courthouse doors to disabled people seeking to ensure access to national parks, accessibly-formatted information from government agencies, effective communication in veterans' and other healthcare facilities, and reasonable accommodations in federal prisons.

## SUMMARY OF ARGUMENT

Section 504 provides a private right of action against Executive agencies. That statute states, in relevant part, "[n]o *otherwise qualified individual with a disability* . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be *subjected to discrimination* … under any program or activity conducted by any Executive agency . . .." 29 U.S.C. § 794(a) (emphasis added). The emphasized phrases are precisely the "rights-creating" language that the Supreme Court has repeatedly recognized support an implied private right of action. *See, e.g., Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001) (holding that it was "beyond dispute" that materially identical language in Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"), created an implied private right of action). The Supreme Court recently confirmed that "it is 'beyond dispute that private individuals may sue' to enforce'"

9

Section 504. *Cummings v. Premier Rehab Keller P.L.L.C.*, 596 U.S. 212, 218 (2022) (internal citation omitted).

The existence of a private right of action to enforce Section 504 against Executive agencies is confirmed not only by the statutory language, but by the history of amendment and reenactment, extensive discussion in the legislative history, and the government's own briefing in cases where it has argued for such a private right of action.

## ARGUMENT

**Section 504 of the Rehabilitation Act Provides a Private Right of Action for Injunctive Relief Against Executive Agencies.**

**A. The Statutory Text of Section 504 Provides a Private Right of Action Against Executive Agencies.**

Starting in 1979 with its decision in *Cannon v. University of Chicago*, 441 U.S. 677, 709 (1979), the Supreme Court has consistently held that the anti-discrimination language used in Section 504 creates a private right of action. Section 504 mandates, in relevant part, that:

> *No otherwise qualified individual with a disability* . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, *or be subjected to discrimination* . . . under any *program or activity conducted by any Executive agency* . . ..

29 U.S.C. § 794(a) (emphasis added). Section 504 was originally enacted in 1973, and its anti-discrimination language tracks that of Title VI and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"), prohibiting race

10

and gender discrimination, respectively, by federal funding recipients. S. Rep. No. 93-1297, at 21 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 6373, 6390.

In *Cannon*, the Court held that the language of Title IX — "*[n]o person . . . shall*, on the basis of sex, be excluded from participation in, be denied the benefits of, or *be subjected to discrimination* under any education program or activity receiving Federal financial assistance," 20 U.S.C. § 1681(a) (emphasis added) — created a private right of action to sue a university that accepted federal funding. *Cannon*, 441 U.S. at 703. "Congress has since ratified *Cannon*'s holding." *Sandoval*, 532 U.S. at 280 (citing Section 1003 of the Rehabilitation Act Amendments of 1986, 100 Stat. 1845, *codified at* 42 U.S.C. § 2000d–7). The *Sandoval* Court held that it "must be taken as given" that "private individuals may sue to enforce § 601 of Title VI." *Id.* at 279 (internal citations omitted). The Court noted that "'rights-creating' language" such as that in section 601 of Title VI, was critical to *Cannon*'s conclusion that Congress intended a private right of action to enforce that section. *Sandoval*, 532 U.S. at 288. Again, Section 504 — by design — contains precisely the rights-creating language that *Cannon* and *Sandoval* held creates a private right of action.

With this history in mind, the 2022 holding in *Cummings* that "it is 'beyond dispute that private individuals may sue to enforce'" Section 504, 596 U.S. at 218, comes as no surprise; the Court has recently reaffirmed that it is bound by

11

*Cannon*'s holding, *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 369 n.1 (2025).

*Cannon*, *Sandoval*, and *Cummings* are clear: A statute mandating that a protected class may not be subjected to discrimination in specified contexts creates a private right of action on behalf of individuals in that protected class to challenge discrimination in those contexts. All three of these cases were decided after the 1978 Amendments[12] added Executive agencies to Section 504's rights-creating language; none suggests any grounds to exclude from any private right of action any part of the specified context in which discrimination is prohibited. Section 504's rights-creating language thus includes a private right of action against Executive agencies. The image below illustrates the parallelism among the three statutes.

---

[12] Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, Pub. L. No. 95-602, § 119, 92 Stat. 2955, 2982, *codified at* 29 U.S.C. § 794(a)) ("1978 Amendments").

| Who? | | What grounds? | | In what context? |
|------|---|---------------|---|------------------|
| Title VI<br>No person in the United States | | on the ground of race, color, or national origin | | under any program or activity receiving Federal financial assistance. |
| Title IX<br>No person in the United States | shall | on the basis of sex | be excluded from [the] participation in, be denied the benefits of, or be subjected to discrimination | under any education program or activity receiving Federal financial assistance. |
| Section 504<br>No otherwise qualified individual with a disability in the United States | | solely by reason of her or his disability | | under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. |

### B. Congress Adopted the Private Right of Action Enforcing Section 504 Against Executive Agencies When It Enacted and Re-Enacted the Rehabilitation Act.

"[W]hen 'judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . . judicial interpretations as well.'" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85-86 (2006) (quoting *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998)). It was crucial to the *Cannon* Court that, "when Title IX was enacted, the critical language in Title VI had already been construed as creating a private remedy." *Id.*, 441 U.S. at 696.

13

This was also the state of the law when Congress added Executive agencies to Section 504 in 1978. "It is always appropriate to assume that our elected representatives, like other citizens, know the law." *Id.* at 696-97. This principle applies with even greater force here, as Congress did more than repeat identical language in a *new* statute; in 1978, it added new covered entities *to the same statute*, preserving the same language that had been interpreted to provide a private right of action.

Furthermore, Congress reauthorized or amended the Rehabilitation Act in 1986, 1988, and 1992,[13] all against a backdrop that, by then, included *Cannon* itself. This "'ratified *Cannon*'s holding' that 'private individuals may sue to enforce'" Title VI and Title IX, and therefore Section 504. *Cummings*, 596 U.S. at 218 (quoting *Sandoval*, 532 U.S. at 280)); *see also Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change").

---

[13] Rehabilitation Act Amendments of 1986, Pub. L. No. 99-506, 100 Stat. 1807; Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, 102 Stat. 28; and Rehabilitation Act Amendments of 1992, Pub. L. No. 102-569, 106 Stat. 4344 ("1992 Amendments").

**C.    The Federal Government Has Taken the Position that Section 504 Creates a Private Right of Action Against Executive Agencies.**

When it is advantageous to its litigating position, the federal government has argued that Section 504 provides a private right of action against Executive agencies. This occurs most often when a disabled plaintiff attempts to challenge Executive agency disability discrimination by bringing a claim under the Administrative Procedure Act ("APA"), which applies only where "there is no other adequate remedy in a court." 5 U.S.C. § 704. Seeking to avoid APA liability in these cases, the federal government often takes the position that Section 504 provides an adequate remedy in a court against Executive agencies.

For example, in one of the cases on which the government now relies for the proposition that Section 504 does not imply a private right of action against the government, *SAI v. Department of Homeland Security*, 149 F. Supp. 3d 99 (D.D.C. 2015), *cited in* Br. for Appellants at 23, the federal government took the position that APA review was unavailable to the plaintiff because "an adequate remedy already exists under the Rehabilitation Act to address" the plaintiff's allegations based on the fact that "Section 504 implies a private right of action to sue for injunctive relief in federal court . . .." Defs.' Reply in Supp. of Mots. to Dismiss and Opp'n to Pl.'s Mot. for Leave to Amend and Mot. for Discovery under Rule 56(d) at 5-6, *SAI v. DHS*, No. 14-1876 (RDM), 2015 WL 13837983 (Aug 27,

15

2015) (citing *Am. Council of the Blind v. Paulson*, 463 F. Supp. 2d 51, 58 (D.D.C. 2006)).

Similarly, in its motion to dismiss in *Palamaryuk v. Duke*, the federal government argued that the plaintiff did not have a claim under the APA because he had "an adequate remedy at law: he can challenge the government's actions under the Rehabilitation Act." Defs.' Mot. to Dismiss at 5-6, *Palamaryuk v. Duke*, No. 2:17-cv-00441-MJP-JPD (W.D. Wash Nov. 7, 2017), Dkt. No. 21. In *United Spinal Association v. Saul*, the government argued that "section 504 of the Rehabilitation Act . . . affords an 'adequate' remedy to redress" the plaintiff's disability discrimination claims against the SSA. Mem. in Supp. of Def's Mot. to Dismiss or, in the Alternative, for Summ. J. at 26, *United Spinal Ass'n v. Saul*, No. 1:20-cv-02236-TSC (D.D.C. Dec. 7, 2020), Dkt. No. 18-1; *see also* Federal Defs.' Notice of Mot. and Mot. to Dismiss Second Am. Compl.; Mem. of P. & A. at 7, *SAI v. Smith*, No. 16-CV-01024-JST (N.D. Cal. Sept. 8, 2017), Dkt. No. 118 (arguing that "the Secretary of the Department of Homeland Security is the only proper defendant" with respect to a Section 504 Rehabilitation Act claim); Resp. to Pl.'s Second Am. Compl. at 2, *McAuliffe v. U.S. Dep't of Veterans Affairs*, No. 3:06-7353-WHA (N.D. Cal. Jul. 17, 2007), Dkt. No. 33 (motion by federal agency to substitute parties as "[t]he only proper defendant in a claim under section 504 of the Rehabilitation Act . . . is the head of the relevant agency.").

16

**D.    The Legislative History of Section 504 Demonstrates that that Statute Provides a Private Right of Action Against Executive Agencies.**

In deciding whether a statute provides a private right of action, "the judicial task [is] … 'limited solely to determining whether Congress intended to create the private right of action asserted.'" *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) (internal citations omitted); *see also Lee v. U.S. Agency for Int'l Dev.*, 859 F.3d 74, 77-78 (D.C. Cir. 2017) (examining the text, structure, and legislative history in evaluating an implied right of action). As the brief of Plaintiffs-Appellees National Association of the Deaf ("NAD") explains in greater detail, Br. for Appellees at 20-23, 31-32, the legislative history of the 1978 Amendments — which added Executive agencies to Section 504 — and of that statute's later reauthorizations demonstrates conclusively that Congress intended Section 504 to provide a private right of action against Executive agencies.

Crucially, in 1978, Senator Stafford — one of the sponsors of the Senate bill — explained that the rights of people with disabilities "are and will continue to be in need of constant vigilance by [disabled] individuals to assure compliance. Private enforcement of these . . . rights is an important and necessary aspect of assuring that these rights are vindicated . . .." 124 Cong. Rec. 37507 (1978).

During the debates on the 1992 reauthorization of Section 504, Senator Jeffords who, as a Representative, had been a primary author of the 1978

17

Amendments, confirmed that those amendments were intended to provide a private right of action to challenge Executive agency discrimination: It is "clear from the language of the 1978 amendments, the associated legislative history, and the subsequent pronouncements of the Members of Congress principally involved with those amendments, [that] it was the intention of Congress to create a private right of action and the courts should so interpret the statute." 138 Cong. Rec. 31521 (1992). Senator Jeffords was emphatic that denying such a private right of action would be "a disgrace" and "the height of hypocrisy, expecting private entities to bear a burden that the Federal Government itself is unwilling to carry." *Id.*

In determining whether Congress intended to create a private right of action "[s]tatutory intent . . . is determinative." *Sandoval*, 532 U.S. at 286. The legislative history of the 1978 and 1992 Amendments to the Rehabilitation Act provides robust and conclusive evidence of Congress's intent to create and then preserve a private right of action to enforce Section 504 against Executive agencies.

In one of the cases on which the government relies here, the court stated that "it is easy to *imagine* why Congress would not have created a private cause of action to enforce Section 504 against federal agencies." *SAI v. DHS*, 149 F. Supp. 3d at 113 (emphasis added). We do not have to imagine, however. Congress made its intent clear: by reenacting the statute against the backdrop of *Cannon*'s holding

18

that a private right of action existed; and over and over in the words of the Senators and Representatives who drafted that legislation.

>    **E.    A Significant Body of Caselaw has Consistently Affirmed a Private Right of Action Under Section 504 Against Executive Agencies.**

The Ninth Circuit has recognized that Section 504 provides a private right of action against Executive agencies. *J.L. v Social Sec. Admin.*, 971 F.2d 260, 264 (9th Cir 1992) ("Congress unequivocally expressed its intent [in section 504] to provide [disabled] victims of government discrimination a private right of action . . . ."); *Doe v. Attorney Gen. of the U.S.*, 941 F.2d 780, 787 (9th Cir. 1991) (holding that Section 504 provided an implied right of action against Executive agencies). Both *J.L.* and *Doe* were overruled in part by the Supreme Court's decision in *Lane v. Peña*, 518 U.S. 187 (1996), as both cases had held that the private right of action provided by Section 504 against Executive agencies included both injunctive and damages remedies. In *Lane*, the Supreme Court ruled that Section 504 damages claims against Executive agencies were barred by sovereign immunity. 518 U.S. at 200. The *Lane* Court explicitly did not reach the plaintiff's claims for injunctive relief, *id*. at 196, so it did not overrule *J.L.* or *Doe* to the extent they recognized a private right of action for injunctive relief. *See, e.g., Davis v. Astrue*, No. 06-cv-6108-EMC, 2011 WL 3651064, at *3 (N.D. Cal. Aug. 18, 2011) (acknowledging that *Doe* was overruled in part by *Lane* but continuing to apply *Doe*'s holding that

19

Section 504 creates a private right of action for injunctive relief against Executive agencies).

Judges in twelve district court cases have reached the same conclusion as the Ninth Circuit:[14]

1. *Nat'l Ass'n of the Deaf v. Trump*, 486 F. Supp. 3d 45, 53-57 (D.D.C. 2020) (holding that Deaf television viewers had a private right of action under Section 504 to challenge the president's failure to provide sign language interpreters for COVID briefings);

2. *Yeh v. U.S. Bureau of Prisons*, No. 3:18-cv-943, 2019 WL 3564697 at *3 (M.D. Pa. Aug. 6, 2019) (holding that Deaf prisoner had a private right of action for injunctive relief under Section 504 against the BOP);

3. *Washington v. Fed. Bureau of Prisons*, No. 5:16-cv-03913-BHH-KDW, 2019 WL 2125246 at *8 (D.S.C. Jan. 3, 2019) (same holding with respect to the claims of a blind prisoner);

---

[14] The government notes that "six decisions, written and joined (in relevant part) by a total of 14 federal judges" have endorsed its view. Br. for Appellants at 23. To the extent this calculation is relevant, *Amici* note that fifteen decisions — not counting those cited in the following footnote — written and joined by a total of nineteen federal judges, have held that there is a private right of action under Section 504 to sue federal agencies.

20

4.  *SAI v. Smith*, No. 16-CV-01024-JST, 2018 WL 534305, at *10 (N.D. Cal. Jan. 24, 2018) (holding that the plaintiff could seek equitable or injunctive relief under Section 504 against the federal defendants, citing *Davis*, 2011 WL 3651064, at *3);

5.  *McRaniels v. U.S. Dep't of Veterans Affairs*, No. 15-cv-802-WMC, 2017 WL 2259622 at *4 (W.D. Wis. May 19, 2017) (Deaf wife of veterans' hospital patient had a private right of action for injunctive relief under Section 504);

6.  *Gray v. Golden Gate Nat'l Recreational Area*, No. 08-cv-00722-EDL, 2012 WL 13140460 at *7-8 (N.D. Cal. Jul. 3, 2012) (holding that *J.L.* and *Doe* continued be good law with respect to a private right of action for injunctive relief under Section 504; people with mobility disabilities had such a claim against the National Park Service);

7.  *Brown v. Cantrell*, No. 11-CV-00200-PAB-MEH, 2012 WL 3264292, at *6 (D. Colo. Feb. 9, 2012), *report and recommendation adopted in part*, No. 11-CV-00200-PAB-MEH, 2012 WL 4050300 (D. Colo. Sept. 14, 2012) (recognizing a prisoner's Section 504 claim for injunctive relief against the federal Bureau of Prisons);

21

8. *Davis*, 2011 WL 3651064 at \*2-5 (recognizing a private right of action of people with mental health or developmental disabilities against the SSA for effective communication);

9. *Am. Council of the Blind v. Astrue*, No. C 05-04696 WHA, 2008 WL 1858928, at \*7 (N.D. Cal. Apr. 23, 2008) (recognizing a private right of action to sue the SSA for failure to provide notices accessible to blind people);

10. *McAuliffe v. U.S. Dep't of Veterans Affs.*, No. 3:06-7353-WHA, 2007 WL 2123690, at \*1, 3 (N.D. Cal. Jul. 23, 2007) (granting the government's motion to substitute the secretary for Veterans Affairs as the sole defendant in the Section 504 claim; holding that "the only proper defendant for a claim under Section 504(a), however, is the head of the relevant agency.");

11. *Paulson*, 463 F. Supp. 2d at 58 (holding that blind individuals had a claim for injunctive relief under Section 504 against the Treasury Department for the design of paper currency); and

12. *Mendez v. Gearan*, 947 F. Supp. 1364, 1370 (N.D. Cal. 1996)

(recognizing private right of action to sue Peace Corps for failure to

accommodate participant with mental illness).[15]

The cases on which the government relies are distinguishable. Three

explicitly apply only to the government in its role as regulator rather than

discriminator. The plaintiff in *Cousins v. Secretary of the United States*

*Department of Transportation* challenged the refusal of that Department to

"amend, modify, or waive its regulation." 880 F.2d 603, 605 (1st Cir. 1989). The

court observed that "the Act is silent about whether and how a person injured by

the government *as regulator* is to enforce the Act," and refused to imply a right to

challenge such regulatory action. *Id.* (emphasis in original). *Clark v. Skinner* then

relied on *Cousins* to, again, reject a private right of action against the Department

---

[15] In a number of cases in which disabled prisoners have brought claims under Section 504 against the federal Bureau of Prisons, the court has acknowledged the existence of a claim for injunctive relief under that statute, while holding it moot based on prison reassignment. *See, e.g., White v. Decker*, No. 1:22-CV-02405-TWP-TAB, 2026 WL 184582, at *18 (S.D. Ind. Jan. 23, 2026); *Hutto v. Warden*, No. 1:23-CV-119-MHC-JSA, 2023 WL 11959636, at *3 (N.D. Ga. Mar. 13, 2023), *report and recommendation adopted*, No. 1:23-CV-119-MHC-JSA, 2023 WL 11959638 (N.D. Ga. Apr. 4, 2023); *Alsop v. Fed. Bureau of Prisons*, No. 3:17-CV-02307, 2020 WL 13282134, at *7 (M.D. Pa. Sept. 30, 2020), *report and recommendation adopted*, No. 3:17-CV-2307, 2022 WL 1556165 (M.D. Pa. Apr. 14, 2022), *aff'd*, No. 22-1933, 2022 WL 16734497 (3d Cir. Nov. 7, 2022); *Hawk v. Fed. Bureau of Prisons*, No. 1:18-CV-1768, 2019 WL 4439705, at *8 (M.D. Pa. Aug. 30, 2019), *report and recommendation adopted*, No. 3:18CV1768, 2019 WL 4439883 (M.D. Pa. Sept. 16, 2019).

of Transportation in its capacity as regulator. 937 F.2d 123, 126 (4th Cir. 1991).

Finally, in *Moya v. United States Department of Homeland Security*, legal

permanent residents challenged the naturalization process as discriminatory. 975

F.3d 120, 124 (2d Cir. 2020). The Second Circuit held that Section 504 did not

"create an express right of action allowing private parties to sue agencies for

*discriminatory regulations* . . .. Nor does the statute reflect Congress's intent to

imply a private right of action against *executive agencies as regulators*." *Id.* at 128

(emphasis added). *See also SAI v. DHS*, 149 F. Supp. 3d at 106 (challenge by *pro*

*se* plaintiff to regulatory agency delay in processing claims).

In addition, both *Cousins* and *Clark* were explicitly repudiated by Congress

in the legislative history of the 1992 Amendments. Senator Jeffords expressed the

view that "recent court decisions denying a private right of action to victims of

discrimination by the Federal Government under section 504 of the Rehabilitation

Act are in direct conflict with the congressional intent," citing *Cousins* and *Clark*.

138 Cong. Rec. 31520 (1992). The Senator also went on to endorse the Ninth

Circuit's decisions in *Doe* and *J.L.* recognizing such a private right of action. *Id.* at

31520-21.

The government also relies on *Doe A v. Spahn*, No. 1:23-CV-02859 (CJN),

2025 WL 1305360, at *4 (D.D.C. May 6, 2025) and *Mathis v. United States Parole*

*Comm'n*, 749 F. Supp. 3d 8 (D.D.C. 2024), both of which in turn rely heavily on

24

the fact that section 505 of the Rehabilitation Act specifies remedies for discrimination by the federal government as an employer and as a funder but not as an actor. *See* 29 U.S.C. § 794a(a)(2). The *Mathis* court cited the Scalia and Garner treatise on statutory interpretation in stating that "the negative-implication canon" requires the conclusion that there is no private right of action to enforce Section 504 against the federal government. *Mathis* 749 F. Supp. 3d at 19 (citing Scalia & Garner, Reading Law: The Interpretation of Legal Texts 107 (2012)). However, those two august authors note that "[v]irtually all the authorities who discuss the negative-implication canon emphasize that it must be applied with great caution, since its application depends so much on context." Scalia & Garner at 96. They go on to point out that, in the context of an implied right of action:

> perhaps the most consequential "implying" of a private right of action — one for violating § 10(b) of the Securities Exchange Act — occurred with respect to a statute that did create express private rights of action for other violations, so that the negative-implication canon would have precluded the implied right of action.

*Id.* (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730 (1975)). There is ultimately no reason to conclude that, when Congress added remedies for two types of violations in Section 505, it somehow negated the clear and contemporaneously-expressed intent to maintain Section 504's established private right of action in the new context — Executive agencies — added to its existing

25

language. It is even more improbable that Congress intended, when reenacting Section 504 in later years, to abrogate *Cannon sub silentio*.

Finally, at the same time that Congress added the remedies in Section 505(a)(2) it added the expansive attorneys' fees provision in Section 505(b), which applies "[i]n any action or proceeding to enforce or charge a violation of a provision of this subchapter." 29 U.S.C. § 794a(b). This unlimited provision makes no sense if the limitations in Section 505(a)(2) were somehow imported back into Section 504 to constrain the latter provision's existing private right of action.

F.     **Private Enforcement of Section 504 Is Indispensable Because Disabled People Cannot Rely on the Government to Police Its Own Discrimination.**

The doctrinal case for a private right of action under Section 504 against Executive agencies is strong, as the foregoing sections demonstrate. *Amici* write to add what doctrine alone cannot: the perspective of organizations that have spent decades enforcing Section 504 in federal court and understand from that experience why the private right of action is a structural necessity.

When the perpetrator of discriminatory conduct is the federal government itself, the government controls the machinery of enforcement — the agencies, investigators, compliance offices, and political leadership responsible for ensuring compliance. As the many cases cited above demonstrate, disabled people and the

26

organizations that represent them have repeatedly been forced to sue federal agencies precisely because those internal mechanisms failed.

The APA is not an adequate substitute. APA review is deferential, its remedies are limited, and its procedural framework is ill-suited to disability discrimination claims that often require injunctive relief, ongoing compliance measures, and systemic reform. The disability-rights victories that *Amici* have secured against Executive agencies — including accessible currency, effective communication for Deaf federal prisoners, physical access to federal facilities, and equal access to healthcare for veterans with disabilities — were achieved through direct Section 504 litigation, not APA challenges. Relegating disabled people to APA review would do more than narrow available remedies; it would fundamentally alter their relationship to the federal government, reducing them from rights-holders entitled to enforce statutory guarantees into petitioners seeking review of agency discretion. Congress understood this when it extended Section 504 to Executive agencies in 1978 — not by relying on those agencies to police themselves, but by preserving the private right of action as the primary guarantee of compliance.

The government asks this Court to hold that disabled people may invoke Section 504 against every covered entity except the federal government itself. This is precisely the "hypocrisy" and "disgrace" that Senator Jeffords warned against

27

and drafted Section 504 to avoid. *See* 138 Cong. Rec. 31521 (1992). That result would leave millions of disabled Americans dependent on the very institutions alleged to have violated their rights. Congress chose a different model — one grounded in independent enforcement by those whose rights are at stake. Section 504 provides that remedy. This Court should hold that it remains available against Executive agencies.

## CONCLUSION

For more than four decades, disabled people have relied on the private right of action under Section 504 to hold the federal government accountable when it discriminates — in national parks, veterans' hospitals, federal prisons, and the halls of power. Those gains were not won through agency self-policing. They were won by disabled people going to court.

A ruling eliminating that right as to Executive agencies would close the courthouse door to the many millions of disabled people who participate in federal programs, at precisely the moment when federal enforcement of disability rights is most uncertain. It would leave the statute's guarantee of nondiscrimination in "every phase of American life" enforceable everywhere except where the federal government is the actor — the one result Congress most clearly did not intend when it extended Section 504 to Executive agencies in 1978.

Section 504 promises disabled people equal access to federal programs and services. That promise is meaningful only if those denied their rights may seek relief from an independent court. *Amici* respectfully request that this Court affirm the decision of the district court.

Respectfully submitted,

s/ *Amy Farr Robertson*

Amy Farr Robertson
Counsel for *Amici Curiae*

Dated: June 2, 2026

## <u>CERTIFICATE REGARDING LENGTH OF BRIEF AND TYPEFACE</u>

The undersigned counsel provides the following certifications required by the Federal Rules of Appellate Procedure and/or Circuit Rules:

1. As required by Rule 32(g) of the Federal Rules of Appellate Procedure, I certify that this brief complies with the type-volume limitation of Rules 29(a)(5) and 32(a)(7)(B)(i) of the Federal Rules of Appellate Procedure because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 6,285 words.

2. I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Times New Roman 14 point type.

/s/ Amy Farr Robertson
Amy Farr Robertson

June 2, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2026, I caused the foregoing document to be electronically filed through this Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.


*/s/ Amy Farr Robertson*
Amy Farr Robertson

## ADDENDUM: STATEMENTS OF INTEREST OF *AMICI CURIAE*

**Disability Rights Education and Defense Fund:** The Disability Rights Education and Defense Fund ("DREDF") based in Berkeley, California, is a national law and policy center dedicated to protecting and advancing the civil rights of people with disabilities. Founded in 1979, DREDF pursues its mission through education, advocacy, and law reform efforts, and is nationally recognized for its expertise in the interpretation of federal disability civil rights laws.

**American Association for People with Disabilities:** The American Association of People with Disabilities ("AAPD") works to increase the political and economic power of people with disabilities, and to advance their rights. A national cross-disability organization, AAPD advocates for full recognition of the rights of over 70 million Americans with disabilities. AAPD does this by promoting equal opportunity, economic power , independent living, and political participation through issue advocacy, resource development, coalition-building, and leadership development.

**Autistic Women & Nonbinary Network:** The Autistic Women & Nonbinary Network ("AWN") provides community support, and resources for Autistic women, girls, transfeminine and transmasculine nonbinary people, trans people of all genders, Two Spirit people, and all people of marginalized genders or of no gender. AWN is committed to recognizing and celebrating diversity and the

many intersectional experiences in our community. AWN's work includes solidarity aid, community events, publications, fiscal support, and advocacy to empower disabled and autistic people in their fight for disability, gender, and racial justice.

**Disability Law United:** Disability Law United ("DLU") is a national disability rights organization committed to eliminating discrimination at every intersection of identity and law. We join this brief because the elimination of ASL interpretation at White House press briefings unlawfully excludes Deaf and hard-of-hearing Americans from access to official government communications, in violation of the Rehabilitation Act, the ADA, and the Constitution. Communication access is a civil right.

**CommunicationFIRST:** Communication First is a national, disability-led nonprofit organization based in Washington, DC, dedicated to protecting the human, civil, and communication rights and advancing the interests of the estimated 5 million people in the United States, including California, who cannot rely on speech to be heard and understood due to disability. Communication First's mission is to reduce barriers, expand equitable access and opportunity, and eliminate discrimination against our historically marginalized population in all aspects of community and society.

33

**Disability Rights Bar Association:** The Disability Rights Bar Association ("DRBA") is a 501 (c)(3) membership organization incorporated in the District of Columbia.  DRBA was formed to advance and enforce the rights of people with disabilities in all spheres of life through the use of litigation and other legal advocacy strategies.  Members of DRBA are disability rights counsel, law professors, legal nonprofits and advocacy groups who share a commitment to effective legal representation of individuals with disabilities.  DRBA has a strong interest in participating as *Amicus Curiae* in this litigation because the court's decision interpreting Section 504 of the Rehabilitation Act of 1973 will affect the fundamental legal rights of people with disabilities and their ability to enforce those rights through a private right of action.

**Justice in Aging:** Justice in Aging's principal mission is to protect the rights of low-income older adults. Through advocacy, litigation, and the education and counseling of legal aid attorneys and other local advocates, we seek to ensure the health and economic security of older adults with limited income and resources. Since 1972, Justice in Aging has worked to promote the independence and well-being of low-income older adults, especially women, members of the LGBTQ community, people of color, people with disabilities and people with limited English proficiency. Justice in Aging works to ensure access to public benefit programs that allow low-income older adults to live with dignity and independence

in the most community-integrated setting possible. Much of our work involves advocacy for equal access to governmental benefits, services and programs, including Medicaid. We are concerned for the preservation of low-income older adults continued ability to access justice through their private enforcement of federal anti-discrimination law.

**National Federation of the Blind:** The National Federation of the Blind ("NFB") is the oldest and largest national organization of blind persons. It has affiliates in all 50 states, D.C., and Puerto Rico. The NFB is a membership organization comprising thousands of blind people, their family members, and individuals who care about issues facing the blind community. The NFB and its affiliates are recognized by the public, Congress, executive agencies, and the courts as a collective and representative voice on behalf of blind Americans and their families. The NFB's mission is to promote the general welfare of the blind by supporting their efforts to integrate themselves into society on terms of equality and by redressing barriers that result in the denial of opportunity to blind persons in virtually every sphere of life—including in education, employment, family and community life, transportation, healthcare, and recreation.

**Paralyzed Veterans of America:** Paralyzed Veterans of America ("PVA") is a national, congressionally-chartered veterans service organization headquartered in Washington, DC. PVA's mission is to employ its expertise,

developed since its founding in 1946, on behalf of armed forces veterans who have experienced spinal cord injury or a disorder (SCI/D). PVA seeks to improve the quality of life for veterans and all people with SCI/D through its medical services, benefits, legal, advocacy, sports and recreation, architecture, and other programs. PVA advocates for quality health care, for research and education addressing SCI/D, for benefits based on its members' military service and for civil rights, accessibility, and opportunities that maximize independence for its members and all veterans and non-veterans with disabilities. PVA has nearly 16,000 members, all of whom are military veterans living with SCI/D. To protect the civil rights of our members, PVA strongly supports enforcement of the Rehabilitation Act, especially when ensuring compliance from government agencies.